## MIDLAND VALLEY R. CO. v. STATE *et al.*

No. 2516.   Opinion Filed November 14, 1911.

(119 Pac. 413.)

1. **RAILROADS — Establishment of Depot — Order of Corporation Commission.** Evidence examined, and **held** sufficient to establish the reasonableness and justness of the order appealed from.

2. **RAILROADS—"Station"—"Depot."** The word "station." as used in section 26, art 9, Const., means a place where railroad trains regularly come to a stand for the convenience of passengers, and taking in freight; and the word "depot" in the same section means a building for the accommodation and protection of railway passengers or freight.

3. **RAILROADS—Duties—Maintenance of Depots.** Under section 26, art 9, Const., it is the duty of each and every railway company within the state to provide and maintain adequate, comfortable, and clean depots at its several stations for the comfort and accommodation of the traveling public. and suitable. freight depots or buildings for the receiving, handling, storing and delivering of all freight handled by such roads.

(Syllabus by the Court.)

*Appeal from State Corporation Commission.*

Appeal by the Midland Valley Railroad Company from an

order of the Corporation Commission-in relation to the establishment of a depot. Order affirmed.

*Edgar A. de Meules,* for appellant.

*Chas. West,* Atty. Gen., *Chas. L. Moore,* Asst. Atty. Gen., and *Z. T. Walrond,* for appellees.

KANE, J. This is an appeal from an order of the Corporation Commission requiring the appellant to establish one of its small type of depots at Briartown, to be maintained and operated as any other depot on its road. The appellant contends that the order of the commission should be set aside, first, because it is contrary to law; second, because it is contrary to the evidence; and, third, because the findings and order of the commission are not supported by the evidence.

In relation to the necessity for a depot at Briartown from the standpoint of the traveling public, the commission found as follows:

"Briartown is a prepay station on the defendant's line of railroad in the southeast part of Muskogee county, about 2½ miles north of Canadian river, and, according to the railroad map issued by the commission, it is 6.1 miles south of Porum by rail, and 8 miles north of Stigler by rail. It is about 5½ miles from Porum by wagon road, and about 11 miles from Stigler by wagon road. It is adjoining the Canadian bottom where allotments average about 80 acres and parties live on all allotments. The town of Briartown has about 70 population, 2 stores, a gristmill, and a blacksmith shop. Hoyt is a country town about 5 miles southwest of Briartown, and south of the Canadian river. Hoyt has about 300 population, 3 or 4 stores, and a cotton gin. Some of the stores at Hoyt do considerable business. Whitefield is also a country town about 3 miles southeast of Briartown. It has a population of about 375. This town would do practically all of its shipping business from Briartown if freight facilities were established. Also a considerable portion of the business from Hoyt would be transacted at Briartown. The country from which Hoyt and Whitefield draw trade, together with the territory of Briartown proper, and, when the fertility of the Canadian bottom land is considered, Briartown it appears from the evidence has sufficient area of agricultural territory and

the requisite number of people to furnish a reasonable amount of business for the maintenance of a railway station."

These findings are amply supported by the evidence, and fairly outline the conditions existing in and around Briartown in so far as they are material to the question involved. The commission also made exhaustive findings as to freight and passenger earnings at that point, from which it concluded that a station at Briartown was not only a reasonable and necessary facility for the convenience of the patrons of the road, but also would be advantageous to the railway company from a financial standpoint. The evidence on this latter phase of the case does not so clearly support the findings of the commission, but in view of the presumption that its orders are *prima facie* just, reasonable, and correct, and another feature of the case which will be noticed hereafter, its findings and conclusions on that point will not be disturbed.

The commission further found that "there is now maintained at Briartown switching facilities, cotton platform, and tickets are sold by the postmaster about 100 feet from the railroad, and passenger trains are stopped on flag. However, the general manager stated at the hearing that this would be made a regular stop." This, we think, with the other facts developed by the evidence, and found by the commission, constitutes Briartown a station within the meaning of that term as used in section 26, art. 9, Const., which provides:

"It shall be the duty of each and every railway company, subject to the provisions herein, to provide and maintain adequate, comfortable, and clean depots, and depot buildings, at its several stations, for the accommodation of passengers, and said depot buildings shall be kept well lighted and warmed for the comfort and accommodation of the traveling public; and all such roads shall keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing and delivering of all freight handled by such roads." ·

One of the definitions of the word "station" found in Webster's International Dictionary is as follows: "A place where railroad trains regularly come to a stand for the convenience

of passengers, taking in freight," etc. And "depot" is defined as follows: "A building for the accommodation and protection of railway passengers or freight." Those words, no doubt, are used in section 26, *supra,* in the sense of the above definitions. If, as we have concluded, Briartown is one of its stations, it is mandatory upon the appellant to provide and maintain an adequate, comfortable, and clean depot thereat for the accommodation and protection of passengers and freight. There is no way to avoid this duty, except by the overthrow of section 26, *supra,* and that section is in no way assailed in this proceeding.

It follows that the order of the Corporation Commission must be affirmed.

All the Justices concur.