### In re SMITH'S ESTATE.
### JACKSON et al. v. BEANE, Adm'r.

No. 18519. Opinion Filed July 17, 1928.

(Syllabus.)

**Courts—Validity of Constitutional Provisions Authorizing Removal of Probate Cases to Proper County After Statehood.**

Sections 1 and 23 of the Schedule of the Constitution of this state are neither inconsistent nor in conflict with each other. The last proviso of section 23 is sufficient to authorize the Legislature to make due provisions for the transfer of certain probate cases which had been cast upon the counties of the state from the Oklahoma territorial courts and the United States courts of the Indian Territory.

Error from District Court, Johnston County; Porter Newman, Assigned Judge.

Application by F. E. Beane, administrator of the estate of Circe Smith, for transfer of administration proceeding, with protest by Lindsey Jackson, nee Smith, et al. From a judgment transferring administration proceeding from Johnston county to Marshall County the protestants appeal. Affirmed.

George E. Rider, for plaintiffs in error.

Don Welch and Hatchett & Ferguson, for defendant in error.

LESTER, J. This action is presented on appeal for the purpose of reversing a certain judgment rendered in the district court of Johnston county, Okla., wherein the district court decreed the removal of certain administration proceedings pending in the county court of Johnston county to the county court of Marshall county.

It appears that prior to statehood J. B. Chastain was, by the United States Court for the Southern District of Indian Territory, appointed administrator of the estate of one Circe Smith, deceased.

The said Chastain duly qualified as administrator of said estate and continued thereafter to act as such.

On the 2nd day of April, 1926, said administrator filed in the county court of Johnston county, Okla., a petition for the purpose of having said county court transfer said administration proceedings from Johnston county, Okla., to Marshall county, Okla., for the reason that said Circe Smith, at the time of her death, was a resident of that part of the Indian Territory now embraced in Marshall county, Okla., and that the venue of said proceedings would properly lie in the county court of Marshall county, if the same had arisen since statehood.

Certain parties who claimed to have an interest in the subject-matter therein filed an answer to the petition of said administrator. A hearing was had on said pleadings in the county court of Johnston county, and that court rendered judgment decreeing and ordering a transfer of said probate proceedings from that county to the county court of Marshall county. From this judgment an appeal was had to the district court of Johnston county, and that court, after hearing the evidence thereon, found that Circe Smith, at the time of her death, was a resident of that portion of the Indian Territory embraced in what is now Marshall county, Okla.; and that the administration proceedings should be transferred from Johnston county to Marshall county.

The plaintiffs in error assign three specifications of error. The first specification of error argued by the plaintiffs in error is that the Constitution of the state contains an inhibition against the transfer of the said administration proceedings; and section 1 of the Schedule of the Constitution is relied upon by plaintiffs in error to sustain this contention. Said section provides:

"No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. And all processes which may have been issued previous to the admission of the state into the Union under the authority of

132-2

the territory of Oklahoma or under the authority of the laws in force in the Indian Territory shall be as valid as if issued in the name of the state."

Also, section 23 of the Schedule provides:

"When this Constitution shall go into effect, the books, records, papers, and proceedings of the probate court in each county, and all causes and matters of administration and guardianship, and other matters pending therein, shall be transferred to the county court of such county, except of Day county, which shall be transferred to the county court of Ellis county, and the county courts of the respective counties shall proceed to final decree or judgment, order, or other termination in the said several matters and causes as the said probate court might have done if this Constitution had not been adopted. The district court of any county, the successor of the United States Court for the Indian Territory, in each of the counties formed in whole or in part in the Indian Territory, shall transfer to the county court of such county, all matters, proceedings, records, books, papers, and documents appertaining to all causes or proceedings relating to estates; Provided, that the Legislature may provide for the transfer of any of said matters and causes to another county than herein prescribed."

The Legislature, in conformity with the last provision of section 23, supra, passed an act providing for the transfer of certain probate proceedings which had been cast upon the several counties of the state, from probate cases pending in the Oklahoma territorial courts and the United States courts of the Indian Territory, at the erection of statehood. Said act is to be found in section 1091, C. O. S. 1921, and, so far as material to the question presented here, reads as follows:

"When it is made to appear that any probate matter pending in any court of this state, which, by acts of Congress and the Constitution, was transferred from the courts of the territory of Oklahoma and the United States courts in the Indian Territory to the courts of this state, is not in the county where the venue of such suit, matter or proceeding would lie if arising after the admission of this state into the Union, the court where such suit, matter or proceeding is pending shall, upon the application of the guardian, executor or administrator, or any other persons having a substantial interest therein, or upon its own motion, when a proper showing has been made for a removal, within 20 days after application is made therefor, make an order transferring such suit, matter or proceeding to the county where the venue would properly lie, if such suit matter or proceeding had arisen since the admission of this state into the Union, by transmitting to such county the original papers, together with certified copies of all orders and judgments, upon the payment of all accrued costs."

It must be conceded that if the death of Circe Smith had occurred since statehood, and she was at that time a resident of Marshall county, Okla., then the venue of the administration proceedings would lie in Marshall county, Okla., only.

The court found that Circe Smith, at the time of her death, was a resident of that part of Indian Territory now embraced in Marshall county, Okla. This finding was amply supported by the testimony, therefore, under section 1091, C. O. S. 1921, it was a proceeding which, if arising since statehood, the venue would be in Marshall county.

The plaintiffs in error contend that section 1 of the Schedule of the Constitution must prevail over section 23 of said Schedule.

This court in the case of Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433, said:

"On the other hand, had no provision been made authorizing the Legislature to provide for the transfer of such causes to other counties than those designated by section 23 of the Schedule, some of the proceedings thus transferred by the Schedule would have been required to have been continued and determined in a county where neither the ward nor the guardian resided, and in which no part of the estate was located. A flexible rule was therefore provided by section 23 of the Schedule for the transfer of these causes, in that they were transferred directly to the county court of the county in which they were pending at the time of the admission of the state, with authority vested in the Legislature to provide by subsequent legislative enactments for the transfer of any of such cases for their final disposition to those counties where they could be proceeded with, with the least inconvenience and hardship to the ward and guardian and expense to the estate."

This court in the case of Independent Cotton Oil Company v. Becham, 31 Okla. 384, 120 Pac. 969, had under consideration section 1 of the Schedule of the Constitution, and this court there said:

"Counsel for defendant take the position that, as the injury was inflicted prior to statehood, the plaintiff was not entitled to the benefit of said provision, although the Constitution was adopted prior to the commencement of the action, for the reason that section 1 of the Schedule preserved the 'status of all suits, rights, etc., arising prior to

statehood as they existed under the territorial government. We cannot agree with counsel. The rule is that no person has a vested right in any particular mode of procedure, and if, before the trial of the cause, a **new** law of procedure goes into effect, it governs, unless the statute itself provides otherwise. There is nothing in the Constitution or the Schedule indicating a purpose to restrict the power of the state to change modes of procedure as to causes of action arising prior to the admission thereof, except as to actions that were pending at that time, unless it is section 1 of the Schedule to the Constitution, which provides:

" 'No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place.'

"Section 1 of the Schedule of the Kansas Constitution provides:

" 'That no inconvenience may arise from the change from a territorial government to a permanent state government, it is declared by this Constitution that all suits, rights, actions, prosecutions, recognizances, contracts, judgments, and claims, both as respects individuals and bodies corporate, shall continue as if no change had taken place.'

"In Cusic v. Douglas et al., 3 Kan. 123, 87 Am. Dec. 458, a judgment for debt was recovered prior to the admission of the state, but the transcript of the judgment was filed in the district court after the admission of the state, and the question was whether section 1 of the Schedule to the Constitution preserved to the judgment creditor a right of execution against the judgment debtor which had been taken away by the homestead exemption clause in the Constitution. The court held:

" 'That the object of the clause was to save all contracts, judgments, etc., so far as the right to enforce them was concerned, leaving the means of enforcing and carying them out subject to such changes as the adoption of the Constitution or the Legislature under it might make. It certainly was not the intention to provide that no change of the remedy which might be adopted under the Constitution should apply to the enforcement of a contract made or judgment rendered before its adoption. Such a construction would operate to keep in force laws flatly repugnant to the Constitution itself, and such laws are by direct implication repealed by that instrument.'

"In Kelley v. Larkin. 47 Cal. 58, the construction of a saving clause was under consideration, which read:

" 'No action or proceeding commenced, and no right accrued before the Code takes effect, is affected by its provision.' (Code Civ. Proc. sec. 8.)

"The court held that a motion for a new trial filed in accordance with the law in force at the time the judgment was rendered was not proper where the Code changed the procedure prior to the time the motion was filed. The acts construed in the Kansas and California cases above cited contain every element found in section 1 of our Schedule, and the foregoing cases satisfactorily construe the same. Other cases to the same effect are Boise City I. & L. Co. v. Stewart, 10 Idaho, 38, 77 Pac. 25, 321; Roenfeldt v. St. L. & S. Ry. Co., 180 Mo. 554, 79 S. W. 706; Marion v. State, 20 Neb. 233, 29 N. W. 911, 57 Am. Rep. 825; Hallock v. U. S., 185 Fed. 417, 107 C. C. A. 487."

When sections 1 and 23 of the Schedule of the Constitution are read together no conflict between them can be found. Section 1 thereof was for the purpose of preserving the vested substantive rights of the litigant as well as the rights of the others that would inure under contracts, claims, or proceedings, etc. It was for the purpose of preventing any injury to the holders of these vested rights by any change in the form of government.

Immediately after statehood probate cases which had been pending in the territorial courts of Oklahoma and the United States courts of the Indian Territory were lodged in the county courts of the several counties of this state.

It was found after the admission of the state, counties had been created whose boundary lines were wholly different from the boundary lines of the judicial units prior to statehood, and therefore, it was deemed best to enact a method whereby probate cases, which had been inherited by the several counties of the state, might be transferred to the counties to which they would have belonged under the facts arising after statehood. This legislation in no way invaded vested rights. It simply provided a uniform method of transferring cases to a judicial forum of convenience and accommodation to the interested parties.

Specifications 2 and 3 are the alleged error of the court in finding from the evidence that said Circe Smith died in what is now Marshall county, Okla.

As hereinbefore stated, we think the testimony abundantly shows that Circe Smith, at the time of her death, was a resident of that part of Indian Territory now embraced in Marshall county.

Judgment is affirmed.

HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See 15 C. J. p. 861, §185.